**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NICHOLAS MILAZZO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO.  4:21-cv-3260 |
| PRINCIPAL LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT**

1.      Plaintiff NICHOLAS MILAZZO, hereinafter referred to as "Plaintiff," brings this ERISA action against the Principal Life Insurance Company Group Welfare Benefits Plan, in its capacity as Administrator of the Thompson & Reilley, P.C. Long Term Disability Plan, hereinafter referred to as "Defendant".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of his employment with Thompson & Reilley, P.C.

**PARTIES**

2.      Plaintiff is a citizen and resident of Houston, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Texas.

4.      The disability plan at issue in the case at bar was funded and

administered by Defendant.

5.     Defendant is a business entity doing business in the Southern District of Texas.   Defendant may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

**JURISDICTION AND VENUE**

6.     This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.     Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas.   Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."   29 U.S.C. § 1132(e)(2).   Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)   "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United*

*States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*).

See Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant.   *Varsic*, 607 F.2d at 248." *See Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 825-26 (5th Cir. 1996)*, citing *Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)*.  Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8.     At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. GLT 1074742.

9.     Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Thompson & Reilley, P.C., with coverage beginning on July 1, 2018.

10.    Said policy became effective March 1, 2017.

11.    At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. §

1002(16)(A).

12.     At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.     Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. GLT 1074742 issued by Defendant.

16.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.     Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan

20.     Except as stated in paragraph 18 below, benefit denials governed under

ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21.    In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a *"de novo"* standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.    Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.    Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.    When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

   a.    Defendant committed the following violations demonstrating its failure furnish a full and provide review:

   b.    Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);

   c.    Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);

5

d.  Failure to follow Defendant's own claims procedures 29 C.F.R. §
    2560.503-1(b);

e.  Failure to adopt guidelines to ensure that similarly situated claims are
    administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

f.  Failure to administrative Plaintiff's claim consistently 29 C.F.R. §
    2560.503-1(b)(5);

g. Failure to provide requested relevant documents timely. 29 C.F.R. §
    2560.503-1(h)(2)(iii);

h. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. §
    2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

i.  Failure to obtain the review of appropriate medical professional. 29 C.F.R.
    § 2560.503-1(h)(3)(iii);

j.  Failure to obtain an appeal review of a different non-subordinate medical
    professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

k.  Failure to obtain an appeal review that does not defer to the prior
    determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

l.  Failure to obtain an appeal review that is conducted by a different non-
    subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

m. Failure to give a claimant an opportunity to review and refute the report of
    a reviewing physician obtained during the appeal review. 29 C.F.R. §
    2560.503-1(h)(4);

n.  Failure to take into account all comments, documents, records, and other
    information submitted to the claimant or by the claimant relating to the
    claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

25.     Defendant's violations of the regulations were not inadvertent or harmless.

26.     Plaintiff contends that because Defendant failed to furnish a full and fair review,

Defendant has relinquished its discretionary authority under the Plan.

27.     In Texas, for disability insurance policies, certificates or riders offered, issued,

6

renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under 1701.062(a) Texas Insurance Code.

28.     Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1, 2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

29.     Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

30.     Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the "interpretation of plan language" and "factual determinations" are to be reviewed by the court under a *de novo* standard.   Therefore, pursuant to *Ariana*, the court should review this matter *de novo*.

31.     ERISA does not preempt state bans on discretionary clauses because of the "savings clause."   ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan."   The "savings clause," however, preserves "any law … which regulates insurance…".   To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured."   *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

32.     Defendant's discretionary ban is therefore not preempted by ERISA and the

Standard of Review for the Court in reviewing this action is *de novo.*

33.     Further, Defendant has a fiduciary obligation to administer the Plan fairly and

to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

34.     Plaintiff is a 32-year-old man previously employed by Thompson & Reilley,

P.C. as an "Attorney."

35.     Attorney is classified under the Dictionary of Occupational Titles as having a

Sedentary exertional level. This occupation also has an SVP of 8 and is highly

skilled work.

36.     Plaintiff's last day actively working was Friday, January 24, 2020.

37.     The following day, Saturday, January 25, 2020, Plaintiff sustained injuries in a

motor vehicle accident, but remained functionally intact and stable.

38.     On January 27, 2020, Plaintiff was administered a negligently inappropriate

dose of medication and the lack of intervention caused widespread paralysis

from his sternum down through his body.

39.     Due to this medical malpractice, Plaintiff alleges that he became disabled on

January 25, 2020, his first day removed from actively working, in line with the

terms in his Plan.

40.     Plaintiff filed for long term disability benefits through the Plan administered by

the Defendant, based on his permanent physical injuries sustained from medical

malpractice committed on January 27, 2020.

41.     The Plan provides for monthly benefits of $3,875.47.

42.     The Plan defines "Total Disability" or "Disabled" as follows:

*A Member will be considered Disabled if, solely and directly because of sickness, injury or pregnancy: During the Elimination Period and the Own Occupation Period, one of the following applies: a. The Member cannot perform the majority of the Substantial and Material Duties of his or her Own Occupation. b. The Member is performing his or her Own Occupation on a Modified Basis or any occupation and is unable to earn more than 80% of his or her Indexed Predisabiity Earnings. After completing the Elimination Period and the Own Occupation Period, one of the following applies: a. The Member cannot perform the majority of the Substantial and Material Duties of any occupation for which he or she is or may reasonably become qualified based on education, training, or experience. b. The Member is performing the Substantial and Material Duties of his or her Own Occupation or any occupation on a Modified Basis and is unable to earn more than 60% of his or her Indexed Predisabillity Earnings. The loss of a professional or occupational license or certification does not, in itself, constitute a Disability.*

43.     The Plan defines "Own Occupation" as follows:

*The occupation the Member is routinely performing when Disability begins. Own Occupation does not mean the specific tasks or job the Member is performing for the Policyholder or at a specific location.*

44.     The Plan defines "Any Occupation" as follows:

*Any occupation for which he or she is or may reasonably become qualified based on education, training, or experience.*

45.      The Plan additionally defines an exclusion for benefits as follows:

*"No benefits will be paid for any Disability that:*

        *c. results from voluntary participation in an assault, felony, criminal activity, insurrection, or riot;…*

46.     Plaintiff's inability to work is not contested by Defendant.

47.     Defendant argued that Plaintiff's disability as a quadriplegic is the result of his

"criminal activity," an exclusion to benefits under the Plan terms.

48.     Defendant's assertion that an exclusionary provision applies effectively shifts the "burden of proof" to Defendant to demonstrate that Plaintiff's claim is excluded from coverage.

49.     Defendant has failed to meet this burden; Defendant argued speculatively that Plaintiff is excluded under the "criminal activity" provision.

50.     Criminal activity is undefined in the Plan. The only reference to "criminal activity" in Plaintiff's claims file is made by Defendant.

51.     Plaintiff has not been charged with a crime; nor has any party claimed Plaintiff engaged in criminal activity.

52.     Even if Plaintiff had participated in "criminal activity", the alleged activity did not cause Plaintiff's current quadriplegia state.

53.     The proximate cause of Plaintiff's quadriplegia claim resulted from medical malpractice committed by a provider he saw on January 27, 2020.

54.     Plaintiff's provider administered a grossly negligent dose of Lovenox 8 hours premature to his standard and scheduled dosage.

55.     "Proximate cause" in Texas medical malpractice asks whether, "but for" the alleged negligence of the medical professional, the harm or injury to the patient would have occurred.

56.     Following Plaintiff's motor vehicle accident, Plaintiff was not paralyzed and had movement in each of his extremities, well-documented in his records and conceded by Defendant's file reviewers.

57.     Because of a provider's negligent breach from the strict standard of medical care, Plaintiff has permanently lost his ability to function below his sternum and can longer perform his occupation in the competitive economy.

58.     Despite this information, on June 17, 2020, Defendant denied Plaintiff's long term disability benefits.

59.     Defendant's denial letter allowed Plaintiff 180 days to appeal this decision.

60.     Defendant's termination letter misattributed the exclusion in Plaintiff's claim, disregarded information from Plaintiff's providers, his medical records, and even Defendant's own expert opinions.

61.      On December 14, 2020, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

62.     Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

63.     Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the terms of the Plan.

64.     Plaintiff further submitted abundant medical documentation regarding the commission and exploration of the medical malpractice that caused his permanent disability.

65.     Plaintiff submitted expert medical opinion from Dr. James Forrest Calland who opined, "In accordance  with the manufacturer's dosing  recommendations and standard practices for DVT prophylaxis in critically ill and surgical patients,

11

Lovenox (either 30mg or 40mg) is administered once daily, or twice daily at 12-hour intervals."

66.      Per Dr. Calland, receiving orders for two 40mg doses of Lovenox to be administered 6 hours apart would be an unexpected and unusual order in an ICU setting for DVT prophylaxis, and should have prompted the nursing and pharmacy staff to intervene and question these 2 orders before administering both doses of Lovenox.

67.      Additionally, Dr. Calland stated that prior to receiving the 2 doses of Lovenox, Plaintiff had a small epidural hematoma secondary to the car collision that was not causing any significant spinal cord compression; he said it was stable according to the imaging done between the time of his collision through the morning of 01/27/2020.

68.      Dr. Calland stated that the second dose of Lovenox proximately caused and contributed to rebleeding at the site of the epidural hematoma, which ultimately cause the claimant's spinal cord compression and spinal cord injury.

69.      Dr. Calland also stated that the failure of Plaintiff's caregivers to bring significant changes in his viral to the immediate attention of a physician, and instead giving him sedatives, was also a proximate cause of his spinal cord injury and paralysis, since Plaintiff's providers should have intervened to decompress his spinal cord around his symptom's appearance at 8:00pm, but failed to treat the symptoms by instead giving him a sedative.

70.      Finally, Dr. Calland stated that Plaintiff was medically unlikely to have any

significant permanent disability or paralysis resulting from his motor vehicle accident and that the proximate cause of Plaintiff's disability was the second administration of Lovenox and lack of timely decompression of his spine.

71.     On or about March 17, 2021, Defendant's paid consultant, William M. Barreto, M.D., physical medicine and rehabilitation and pain medicine, performed a paper review of Plaintiff's claim file.

72.     Dr. Barreto's opinion provided speculative conjecture about the state of Plaintiff's injuries apart from what he conceded objectively to be an "over dosage" of Lovenox.

73.     On or about March 17, 2021, Defendant's paid consultant, Stephen H. Broomes, M.D., internal medicine, performed a paper review of Plaintiff's claim file.

74.     Dr. Brooms opined, "Cases of epidural or spinal hemorrhage and subsequent hematomas have been reported with the use of Lovenox and epidural or spinal anesthesia/analgesia or spinal puncture procedure, resulting in long-term of permanent paralysis as well." Dr. Brooms indicated in his report that the overdosage of Lovenox was not a prophylactic dose and it was a cause in Plaintiff quadriplegia.

75.     On or about March 17, 2021, Defendant's paid consultant, Christian J. Ochoa, M.D., vascular surgery, performed a paper review of Plaintiff's claim file.

76.     Dr. Ochoa opined that it was likely Plaintiff's hematoma that caused him paralysis and that the 2 doses of Lovenox likely contributed to the hematoma.

77.     On or about March 17, 2021, Defendant's paid consultant, Ryan S. Trombly, M.D., neurological surgery, performed a paper review of Plaintiff's claim file.

78.     Dr. Thombly opined that the administration of the second dosage of Lovenox was a cause of his claimed disability.

79.     On or about May 6, 2021, Defendant's paid consultant, William M. Barreto, M.D., physical medicine and rehabilitation and pain medicine, prepared an addendum to his paper review of Plaintiff's claim file.

80.     On or about May 6, 2021, Defendant's paid consultant, Stephen H. Broomes, M.D., internal medicine, prepared an addendum to his paper review of Plaintiff's.

81.     On or about May 6, 2021, Defendant's paid consultant, Christian J. Ochoa, M.D., vascular surgery, prepared an addendum to his paper review of Plaintiff's.

82.     On or about May 6, 2021, Defendant's paid consultant, Ryan S. Trombly, M.D., neurological surgery, prepared an addendum to his paper review of Plaintiff's.

83.    Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a.     The reviewers' opinions were infected by conflict and bias;

b.     The reviewers' conclusions lack foundation and are conclusory;

c.     The reviewers failed to consider the proximate cause of Plaintiff's injuries;

d.     The reviewers lacked appropriate qualifications to comment on Plaintiff's

14

conditions;

e.      The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.      The reviewers failed to consider all relevant information, including Plaintiff's medical malpractice claim;

g.      The reviewers based their opinions on a summary reports of other underqualified opinions; and

i.      The reviewers' conclusions were inconsistent with the weight of the evidence.

84.     Defendant's consultants completed their reports without examining Plaintiff.

85.     Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for long term disability benefits.

86.     Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

87.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented cause of Plaintiff's conditions.

88.     The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

89.     A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

90.     More information promotes accurate claims assessment.

91.     Despite having the right to a physical examination, Defendant did not ask

Plaintiff to submit to one.

92.     Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

93.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

94.     Plaintiff suffers from quadriplegia and is totally paralyzed below his sternum.

95.     His hospital records document the negligent handling of his medical care and his providers have opined that these actions are the proximate cause of his quadriplegia.

96.     Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

97.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

98.     As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

99.     Plaintiff's quadriplegia is not caused by a criminal act; it was caused by medical malpractice.

100.     However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

## DEFENDANT'S CONFLICT OF INTEREST

101.     At all relevant times, Defendant has been operating under an inherent

and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

102.    Defendant's determination was influenced by its conflict of interest.

103.    Defendant's reviewing experts are not impartial.

104.    Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

105.    Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

106.    Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

107.    Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

108.    Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

109.    Plaintiff incorporates those allegations contained in paragraphs 1 through 108 as though set forth at length herein.

110.    Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a.    Plaintiff is totally disabled, in that he cannot perform the material duties of

17

his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

b.      Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled, and his claim is not excluded;

c.      Defendant's interpretation of the exclusory provision contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.      Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

111.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 111 above.

112.    By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.      Grant Plaintiff declaratory relief, finding that he is entitled to all past due long term disability benefits yet unpaid;

B.     Order Defendant to pay past due long term disability benefits retroactive to April 14, 2020 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.     Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.     Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.     For such other relief as may be deemed just and proper by the Court.


Dated:  Houston, Texas
         October 6, 2021

Respectfully submitted,

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.


By:     __/s/ Britney McDonald_____
        Britney Anne Heath McDonald
                Tex. Bar. No. 24083158
                Fed. I.D. No. 2621983
                britney@marcwhitehead.com
        Madison Tate Donaldson
                Tex. Bar No. 24105812
                Fed. I.D. No. 3151467
                madison@marcwhitehead.com
        Selina Valdez
                Tex. Bar No. 24121872
                Fed. I.D. No. 3633062
                selina@marcwhitehead.com

19

Marc S. Whitehead
    Tex. Bar No. 00785238
    Fed. I.D. No. 15465
    marc@marcwhitehead.com
J. Anthony Vessel
    Tex. Bar. No. 24084019
    Fed. I.D. No. 1692384
    anthony@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
NICHOLAS MILAZZO